No. 2414.

## NICOLAS GUAJARDO *v.* THE STATE.

1. PRACTICE—EVIDENCE.—On a trial for theft the State, over the objection of the accused, was permitted to prove that, for the four or five years prior to the trial, the accused had been confined in the penitentiary for felony. *Held*, that the proof was illegal and incompetent. Its admission was error in the first place, and the trial court further erred in overruling the motion of the accused to exclude it from the consideration of the jury.
2. SAME.—District Court Rule No. 57 provides, with regard to exceptions to evidence, that, if the evidence is obviously competent and admissible as tending to prove any fact put in issue by the pleadings, then the objection must assign the reason upon which it is interposed. Note a case to which the rule does not apply.
3. HORSE THEFT—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT. See the statement of the case for evidence on a trial for horse theft which, being wholly circumstantial, is held to have demanded of the trial court a charge upon circumstantial evidence.

APPEAL from the District Court of Nueces. Tried below before the Hon. J. C. Russell.

The conviction in this case was for the theft of two horses, the property of A. A. White. The penalty assessed by the verdict was a term of five years in the penitentiary.

A. A. White was the first witness for the State. He testified that he lived in Victoria county, Texas, on the Victoria and Refugio road, and about three miles distant from Victoria. On the evening of November 30, or December 1, 1886, while witness was at his corn crib, two Mexicans came to his fence, called to him, and asked for something to eat, at the same time saying they had a sick companion at their camp, which was in sight. Witness told them that it was too late for him to have meals prepared for them, but that they could go to a negro cabin in sight, and get what they wanted. They left, and the negroes afterwards told witness that they gave the Mexicans something to eat, for which they received an old coat in payment, the Mexicans claiming that they had no money. Witness was unable to identify the defendant as one of those Mexicans. On that evening the witness went to the town of Victoria. He returned

about dusk and turned his team, two horses, into the horse lot. Those horses were taken from the lot during the night, and witness missed them on the next morning. He made diligent search throughout the country for them, but failed to find them. He was afterwards notified by the sheriff of Nueces county that his animals were in Corpus Christi. He went to Corpus Christi, and the horses were delivered to him by the sheriff. The horses belonged to the witness, and were taken from his possession without his knowledge or consent.

George Elsworth testified, for the State, that the sheriff of Nueces county, upon receiving a telegram to watch for two suspicious looking Mexicans, then en route for Corpus Christi, with two horses supposed to be stolen, sent the witness and another man to the crossing near the reefs to watch for them. A short while after dark on the night of December 1, 1886, the witness met the defendant and another Mexican in the "rincon" between the reef and the city of Corpus Christi. They were riding horses without saddles or bridles. Witness seized the rope of the horse ridden by the defendant, and ordered the Mexican to halt. Defendant made no effort to escape, but his companion succeeded in escaping. Defendant then claimed that the horse he was riding belonged to his companion who had escaped, and whom he called Antonio. He said that Antonio, riding one and leading the other horse, overtook him on the road, and loaned him the horse to ride to Corpus Christi. Afterwards the defendant told witness that the name of his companion was Refugio Aguirre, and he had since ascertained that Aguirre is now a convict in the penitentiary. In reply to questions propounded by the defense in cross examination, the witness stated that he knew the defendant, and that the defendant's home was in Corpus Christi. The district attorney, upon re-examination, asked the witness where the defendant had lived for the last four or five years. Over the defendant's objection, the witness was permitted to answer that during the period named the defendant had lived in the penitentiary. The defense then moved that the question and answer be stricken out, and withdrawn from the jury; which motion was overruled.

Pat Whelan, sheriff of Nueces county, testified, for the State, that he knew the defendant and Refugio Aguirre, both of whom were reared in Corpus Christi. Defendant knew Aguirre well and could, at no time, have been ignorant of his right name.

The State closed.

Juan Garcia was the first witness for the defense.   He testified that he knew the defendant.   On or about the last day of November, 1886, the witness, traveling the main public road, and going from the town of Refugio to the town of Victoria, met the defendant, who was alone and traveling on foot towards Refugio.   Defendant was then about fifteen miles from Refugio, which town was about forty-five miles from Victoria.

Rosalio Cisnovo testified, for the defense, that he lived in the town of Refugio.   On returning to his home late on the evening of November 30, 1886, the witness found the defendant at his house.   No person came with defendant to witness's house, and witness was informed that defendant came there on foot.   He had no horse at the house, and witness observed that his feet were much swollen as if from long walking.   On the morning of December 1, 1886, defendant left witness's house on foot, going off towards Corpus Christi, to which town he said he was going.

Andrew Green testified, for the defense, that he lived within a mile of the town of St. Mary's, in Refugio county.   When witness came home from his work on the evening of November 30, 1886, he found the defendant and another Mexican at his house. They had two horses, which were picketed on the road side a short distance from the house and in open public view.   Within a short while the two Mexicans left with their horses, going towards Corpus Christi.

The motion for a new trial raised the questions discussed in the opinion.

*Waul & Walker,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Hurt, Judge.   This appeal is from a conviction for theft of a horse, and the case is submitted by the Assistant Atterney General on confession of error.

Over objection of appellant, the State proved that he, appellant, had lived in the penitentiary as a convict for the last four or five years.   This fact being elicited by a question not necessarily calling for such an answer, counsel for appellant also moved the court to exclude this matter from the consideration of the jury, and, the court refusing, an exception was reserved.   We will not discuss the competency of such supposed evidence.   The action of the court in admitting and refusing to exclude this matter from

the jury was simply, whether intended or not, an outrage upon the rights of the accused.

It may be contended that, as no reason or ground of objection was stated by counsel for appellant, defendant can not complain of the ruling of the court. The rule upon this subject is that, if the evidence is obviously competent and admissible as tending to prove any of the facts put in issue by the pleadings, then a reason should be assigned for objecting to it. (Rules for District Courts, No. 57.) That appellant had lived as a convict in the penitentiary for the last four or five years was not competent and admissible evidence to prove, or tend to prove, any issue raised in this case, hence no ground of objection to its admissibility was required.

This is a case depending alone for conviction upon circumstantial evidence. The rules applicable to such a case should be given in charge to the jury. This was not done, which was error.

For the errors above noticed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 1, 1888.